1  PORTER LAW GROUP, INC.
2  Jason A. Rose [271139]
   11335 Gold Express Drive, Suite 100
3  Gold River, California 95670
   Telephone: 916-381-7868
4  Facsimile: 916-381-7880
   Email: jrose@porterlaw.com
5
   Attorneys for Plaintiff
6  CALIFORNIA ENVIRONMENTAL SYSTEMS, INC.

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10                  **[Sacramento Division]**

11                       —ooOoo—

12

13 | United States, For the Use of CALIFORNIA | CASE NO. |
   | ENVIRONMENTAL SYSTEMS, INC., a | |
14 | California corporation, | **COMPLAINT FOR:** |
15 | Plaintiff, | 1) BREACH OF CONTRACT |
16 | | 2) ACCOUNT STATED |
   | v. | 3) OPEN BOOK ACCOUNT |
17 | | 4) REASONABLE VALUE |
   | PATRIOT CONSTRUCTION, INC., and | 5) MILLER ACT CLAIM ON |
18 | FIDELITY AND DEPOSIT COMPANY OF | PAYMENT BOND |
   | MARYLAND. | |
19 | | |
20 | Defendants. | |

21

22         Use Plaintiff, CALIFORNIA ENVIRONMENTAL SYSTEMS, INC., a California corporation,

23 complains and alleges:

24         1.      This Court has original jurisdiction over the Miller Act Claim on Payment Bond

25 alleged herein pursuant to 40 U.S.C. §§ 3131-3133 and 28 U.S.C. §§ 1331, 1352 and 1391(b), and

26 jurisdiction over all remaining state law causes of action pursuant to 28 U.S.C. §§ 1367 and 1391(b),

27 inasmuch as each remaining cause of action arises from the same transaction or occurrence, facts and

28 circumstances, or forms part of the same controversy that gives rise to the Miller Act claim. Venue

---

**COMPLAINT**

therefore lies in the United States District Court for the Eastern District of California pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2).

2.      Pursuant to the Miller Act, 40 U.S.C. § 3133, any civil action on a payment bond such as the one at issue in this case, as described below, must be brought in the name of the United States for the use of the person bringing the action, and must also be brought in the United States District Court for any District in which the contract was to be performed unless there is a contractual forum selection clause in the applicable contract. In this case there is no forum selection clause in the contract. The contract was performed at Beale Air Force Base in Yuba County, California. The Federal Court having jurisdiction over a contract performed in Yuba County is the Sacramento Division of the United States District Court for the Eastern District of California.

3.      At all times herein Plaintiff California Environmental Systems, INC. (hereinafter "CES" or "Use-Plaintiff") entered into a written agreement with general contractor Patriot Construction, Inc. (hereinafter "Patriot"), whereby Use-Plaintiff agreed to provide work, labor, materials, services and equipment, and did provide work, labor, materials, services and equipment, for a work of improvement on and for the project known as the Repair HVAC Network Control Center, Building 2445 at Beal Air Force Base, located in the County of Yuba, State of California and for which Patriot was acting as general contractor for the United States (The "PROJECT"). A true and correct copy of that written agreement is attached hereto and incorporated herein as EXHIBIT A.

4.      Pursuant to, and for the purpose of complying with applicable contractual terms and federal law, including the Miller Act, 40 U.S.C. §§ 3131-3133, Patriot, as general contractor obtained a Payment Bond, Bond No. PRF 9338471 from Defendant Fidelity and Deposit Company of Maryland ("Fidelity") for the purpose of securing payment for all work, labor, materials, services and equipment provided at, on or for the public work or property of the Federal Government. A true and correct copy of that Miller Act Payment Bond is attached hereto and incorporated herein as EXHIBIT B.

5.      The contract was executed for work to be performed, and that was performed on public work or property of the Federal Government located in the County of Yuba, State of California. The correct venue is the Sacramento Division of the U.S. District Court for the Eastern District of California.

**COMPLAINT**

**PARTIES**

6.    Use-Plaintiff, CES is and was at all times relevant to this proceeding a California corporation duly registered and in good standing with the California Secretary of State and duly licensed as a general engineering and specialty contractor by the California Contractors State License Board (CSLB License No. 964556; Class A, C20, and C36) and authorized to provide material, equipment, and services, and to otherwise contract and subcontract for the improvement of real property as described herein.

7.    Pursuant to the Miller Act, 40 U.S.C. §§ 3131-3133, Use-Plaintiff also initiates this lawsuit in the name of the UNITED STATES, for the use of Use-Plaintiff for claims involving public works of, or contracts with, the United States.

8.    Use-Plaintiff is informed and believes, and thereon alleges that at all times relevant to this action, Defendant Patriot, is and was a California corporation registered with the California Secretary of State and a purported licensed general building contractor in the State of California, registered with the Contractors' State License Board (CSLB License No. 905350; Class B and C39), to contract for the improvement of real property as described in this Complaint.

9.    Use-Plaintiff, is informed and believes, and thereon alleges that at all times relevant to this action, Defendant Fidelity, is and was an Illinois corporation engaged in the business of providing insurance, sureties, or bonds, or acting as same, and which provided and continues to maintain a Miller Act Payment Bond relevant to this proceeding as described herein.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract Against Patriot)**

10.    Use-Plaintiff re-alleges, and incorporates herein by reference, all the allegations contained in paragraphs 1 through 9 of this Complaint.

11.    On or about February 3, 2020, Use-Plaintiff and PATRIOT entered into a written agreement whereby Use-Plaintiff agreed to and did provide materials, labor, services and equipment to Defendant for the PROJECT. In exchange for these materials, labor, services and equipment, PATRIOT agreed to pay Use-Plaintiff. The agreement required CES to pave the prepared road surface to a depth of 3 inches of asphalt. After the work was fully completed, the principal sum owed and remaining unpaid to CES totaled $351,606.54.

12.     Use-Plaintiff performed, to the extent it has not otherwise been excused from performing, all the terms, obligations and conditions on its part to be performed under the agreement.

13.     PATRIOT breached the agreement and its legal duty by, inter alia, failing to pay Use-Plaintiff timely and in full, for the materials, labor, services and equipment supplied pursuant to the contract and at the special instance and request of PATRIOT.

14.     As a direct and proximate result of PATRIOT's breach, Use-Plaintiff has suffered damages in the principal sum of $351,606.54, together with interest thereon at the highest legal rate plus attorneys fees and costs according to proof.

## SECOND CLAIM FOR RELIEF

### (Open Book Account Against Patriot)

15.     Use-Plaintiff re-alleges, and incorporates herein by reference, all allegations contained in paragraphs 1 through 14 of this Complaint.

16.     Within the last four years PATRIOT became indebted to Use-Plaintiff on an open book account for money due to Use-Plaintiff for materials, labor, service and equipment provided at the special instance and request of PATRIOT.

17.     Despite Use-Plaintiff's demand for payment, and after application of all applicable payments and credits, there is still due, owing and unpaid to Use-Plaintiff the principal sum of $351,606.54 together with interest thereon at the highest legal rate plus attorney's fees and costs according to proof.

## THIRD CLAIM FOR RELIEF

### (Account Stated Against Patriot)

18.     Use-Plaintiff re-alleges, and incorporates herein by reference, all allegations contained in paragraphs 1 through 17 of this Complaint.

19.     Within the last four years, PATRIOT became indebted to Use-Plaintiff because an account was stated in writing by and between Use-Plaintiff and PATRIOT in which it was agreed that PATRIOT was indebted to Use-Plaintiff.

20.     Despite Use-Plaintiff's demand for payment, after application of all applicable payments and credits, there is still due, owing and unpaid to Use-Plaintiff the principal sum of $351,606.54, together with interest thereon at the highest legal rate plus attorney's fees and costs

**COMPLAINT**

according to proof.

## FOURTH CLAIM FOR RELIEF

### (Reasonable Value Against Patriot)

21.     Use-Plaintiff re-alleges and incorporates herein by reference, all allegations contained in paragraphs 1 through 20 of this Complaint.

22.     Within the last two years, PATRIOT became indebted to Use-Plaintiff for materials, labor, services and equipment rendered at the special instance and request of PATRIOT and for which PATRIOT promised to pay Use-Plaintiff the reasonable value.

23.     Despite Use-Plaintiff's demand for payment, after application of all applicable payments and credits, there is still due and owing and unpaid to Use-Plaintiff the principal sum of $351,606.54 together with interest thereon at the highest legal rate plus attorney's fees and costs according to proof.

## FIFTH CLAIM FOR RELIEF

### (Miller Act Claim on Payment Bond Against Patriot and Fidelity)

24.     Use-Plaintiff re-alleges, and incorporates herein by reference, all allegations contained in paragraphs 1 through 23 of this Complaint.

25.     On or about February 3, 2020, Use-Plaintiff and PATRIOT entered into a written agreement whereby Use-Plaintiff agreed to and did provide materials, labor, services and equipment to Defendant for the PROJECT.  In exchange for these materials, labor, services and equipment, PATRIOT agreed to pay Use-Plaintiff.  The agreement required CES to pave the prepared road surface to a depth of 3 inches of asphalt.  After the work was fully completed, the principal sum owed and remaining unpaid to CES totaled $351,606.54.

26.     Use-Plaintiff performed, to the extent it has not otherwise been excused from performing, all the terms, obligations and conditions on its part to be performed under the agreement.

27.     PATRIOT breached the agreement and its legal duty by, inter alia, failing to pay Use-Plaintiff timely and in full for the materials, labor, services and equipment supplied pursuant to the contract and at the special instance and request of PATRIOT.

28.     As a direct and proximate result of PATRIOT's breach, Use-Plaintiff has suffered damages in the principal sum of $351,606.54, together with interest thereon at the highest legal rate

-5-

**COMPLAINT**

plus attorney's fees and costs according to proof.

29.  Use-Plaintiff is informed and believes, and thereon alleges, that PATRIOT, as principal, and Fidelity, as surety, executed a payment bond, Bond No. PRF 9338471, (Exhibit "B") for the purpose of complying with applicable contractual terms and federal law, including the Miller Act, 40 U.S.C. §§ 3131-3133, and for the purpose of securing payment for all work, labor, materials, services and equipment provided at, on or for the PROJECT.  The Payment Bond was thereafter filed with and approved and authorized by the U.S. Government to approve Miller Act Payment Bonds.

30.  Use-Plaintiff is informed and believes that the Payment Bond is and was in an adequate sum to cover the claims alleged in this Complaint, and was further conditioned or provided that if PATRIOT failed to pay for any work, labor, materials, services or equipment used in, on for or about the construction of the work of improvement at the PROJECT, that Fidelity would pay the same to Use-Plaintiff.

31.  During the course of completion of the work of improvement at the PROJECT, Use-Plaintiff supplied work, labor, materials, services and equipment at the special instance and request of PATRIOT, which said work, labor, materials, services and equipment were actually performed or provided in, upon and about the construction of the work of improvement.

32.  In spite of demand for payment, there is still due, owing and unpaid to Use-Plaintiff the principal sum of $351,606.54, together with interest thereon at the highest legal rate and attorney fees and costs as provided by statute and the Bond.

## PRAYER

WHEREFORE, Use-Plaintiff prays for judgment as follows:

1.  For damages in the principal sum of $351,606.54 as well as interest thereon at the highest legal or contractual rate;

2.  For execution on all payment bonds referenced herein;

3.  For consequential and resulting damages according to proof;

4.  For all attorney fees, costs of suit, and expenses incurred in bringing this action, according to proof;

5.  For any and all other relief as the Court may deem just and proper.

1     Dated: April 1, 2022                                PORTER LAW GROUP, INC.

2

3

4                                                By: _____
                                                 Jason A. Rose
5                                                Attorneys for Use Plaintiff,
                                                 CALIFORNIA ENVIRONMENTAL
6                                                SYSTEMS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

**EXHIBIT A**

**Patriot Construction Inc** .
Sub- Contract Number: PC-19-356-003

Repair HVAC Network Control Center
Building 2445
Beale AFB, CA 95903



## SUBCONTRACT AGREEMENT

This subcontract is between:

| CONTRACTOR | and | SUBCONTRACTOR |
|---|---|---|
| Patriot Construction, Inc. | | California Envrionmental |
| 4646 Qantas Lane, Suite B-4 | | Systems, Inc. |
| Stockton, CA 95206 | | 12265 Locksley Lane |
| | | Auburn, CA 95602 |

For certain work to be performed at "The Project":

Repair HVAC Network Control Center

Located at:

Building 2445
Beale AFB, CA 95903

In consideration of the mutual promises hereinafter set forth CONTRACTOR and SUBCONTRACTOR mutually agree as follows:

1. Scope of the Work:  SUBCONTRACTOR will furnish all management, labor, equipment, tools, materials, hoisting and proper supervision and coordination to complete in a first-class and workmanlike manner the work described in, and as detailed in, Exhibit "A" attached hereto in a good, workmanlike and substantial manner (the "WORK"), subject to the terms and conditions hereinafter set forth.

2. Contract Documents:  SUBCONTRACTOR will perform its WORK in accordance with the Contract Documents, which are identified as this Subcontract, the Prime Contract between AGENCY and CONTRACTOR and any other documents as follows:MIL Master Construction Specifications and Final Conformed Plans and Specifications provided on the following link: https://files.secureserver.net/0fNaBEqQJbStFl

SUBCONTRACTOR agrees to be bound to CONTRACTOR in the same manner and to the same extent as CONTRACTOR is bound to AGENCY under the Contract Documents, including, but not limited to, all applicable terms and provisions thereof. Where, in the Contract Documents, reference is made to CONTRACTOR, and the work or specifications therein pertain to SUBCONTRACTOR's trade, craft, type of work or scope of the WORK described in paragraph 1 above, such terms or provisions shall be interpreted to apply to SUBCONTRACTOR instead of CONTRACTOR.

CPJ

Subcontractor Initial

1

CMC

Contractor Initial

3. <u>Examination of the WORK</u>: SUBCONTRACTOR has examined the Contract Documents and the applicable ordinances, rules, regulations, and building codes, and has examined the site of the WORK and satisfied himself as to all conditions to be encountered in the performance of the WORK.

4. <u>Utilities</u>: Before commencing the WORK, SUBCONTRACTOR will satisfy himself as to the location of all utilities that may affect or interfere with SUBCONTRACTOR's WORK. SUBCONTRACTOR will fully protect all utilities, and keep them operating at all times.

5. <u>Total Subcontract Price</u>: For all services performed by SUBCONTRACTOR under this Subcontract, CONTRACTOR will pay SUBCONTRACTOR the Total Subcontract Price of $536,680.00          subject to additions and deductions as set forth herein.

6. <u>Progress Payments</u>: The SUBCONTRACTOR shall submit within ten (10) days of execution of this Agreement, a detailed schedule of values showing the breakdown of the Subcontract Price into its various parts for use only as the basis of assessing the SUBCONTRACTOR'S monthly requisitions.

On or before the 23rd of each month, the SUBCONTRACTOR shall submit to the CONTRACTOR in the form of an updated schedule of values including a written requisition for payment in accordance with the payment provisions and agreed upon prices of this agreement, or written modifications, showing the proportionate value of the work installed to that date. Included in the value of the work installed shall be all previous payments and all charges for services, materials, equipment and other items furnished by the CONTRACTOR to or chargeable to the SUBCONTRACTOR, and the balance of the amount of such requisition, as approved by the Contractor. The CONTRACTOR reserves the right to advance the date of any payment (including the final payment) under this Agreement if, in CONTRACTOR's sole judgment, it becomes desirable to do so.

SUBCONTRACTOR understands, acknowledges and agrees that CONTRACTOR receives payment from AGENCY based upon AGENCY'S approval of the estimated amount and value of work or services performed. SUBCONTRACTOR shall prepare and submit invoices to CONTRACTOR including the following information:

    a. The name and address of SUBCONTRACTOR;
    b. Invoice date;
    c. A description of all labor, services, materials and equipment furnished by SUBCONTRACTOR under this Subcontract up to and including the date that the invoice is prepared;
    d. Name and address of SUBCONTRACTOR official to whom payment is to be sent; and
    e. Name, title, phone number and mailing address of person to be notified in the event of a defective notice;
    f. Updated schedule of values



Subcontractor Initial

2

Contractor Initial

Upon receipt of such invoice, in proper form, CONTRACTOR shall include the work and/or services performed in its next application for payment to AGENCY. CONTRACTOR shall make payment to SUBCONTRACTOR pursuant to SUBCONTRACTOR's invoice for progress payment not later than seven (7) days from receipt of payment out of such amounts as are paid to CONTRACTOR for SUBCONTRACTOR's work and/or services.

Payments shall be made as provided herein. SUBCONTRACTOR acknowledges that only strict compliance with the Contract Documents, and neither substantial performance nor compliance entitles SUBCONTRACTOR to payment.

Payments to SUBCONTRACTOR shall not become due and may be withheld on account of: (1) incomplete or defective Work not timely remedied, (2) claims filed by whomsoever against SUBCONTRACTOR, CONTRACTOR and/or AGENCY concerning the Work, (3) failure of SUBCONTRACTOR to make payments properly to sub-subcontractors or to SUBCONTRACTOR's suppliers of labor, materials or equipment, (4) damage to another contractor resulting from SUBCONTRACTOR's actions or inactions, (5) unsatisfactory and/or untimely prosecution of the Work by SUBCONTRACTOR, and (6) for any other reason specifically set forth in this Subcontract.

SUBCONTRACTOR shall be entitled to an interest penalty for each payment not made in accordance with this payment clause for the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made, computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time CONTRACTOR accrues the obligation to pay an interest penalty.

SUBCONTRACTOR shall include a payment clause and an interest penalty clause conforming to the standards set forth herein in each of its subcontracts, and shall require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

7. Final Payment: SUBCONTRACTOR understands, acknowledges and agrees that CONTRACTOR receives final payment from AGENCY 30 days after receipt by AGENCY of a proper final invoice from CONTRACTOR or the 30th day after AGENCY accepts the work or services completed by CONTRACTOR, whichever is later. Final payment to SUBCONTRACTOR of the balance owed to SUBCONTRACTOR, based on completion and acceptance of all work and presentation of releases of all claims against AGENCY arising by virtue of this Subcontract shall be due not later than seven (7) days from receipt of payment out of such amounts as are paid to CONTRACTOR for SUBCONTRACTOR's work and/or services.

Final payment shall not be due under this Subcontract until SUBCONTRACTOR has delivered to CONTRACTOR a complete release of all claims and/or liens arising out of

3

Subcontractor Initial

Contractor Initial

Work performed pursuant to this Subcontract and /or receipts indicating payment in full concerning all labor, materials and equipment for the Work, or a bond satisfactory to CONTRACTOR indemnifying CONTRACTOR and AGENCY against any such claim/lien.

The making of final payment shall constitute a waiver of all claims by CONTRACTOR except those arising from: (1) unsettled liens, (2) faulty or defective Work appearing after completion thereof, (3) failure of the Work to comply with the requirements of the Contract Documents, or (4) violation of the terms of any special guarantees required by the Contract Documents.

8. Payment not Approval: It is not to be inferred from the fact that CONTRACTOR makes payments to SUBCONTRACTOR under this Subcontract that CONTRACTOR accepts, or has approved, any work performed by SUBCONTRACTOR. CONTRACTOR may not waive its right to insist on full compliance by SUBCONTRACTOR with all the requirements of the Contract Documents except in a written document, approved in writing by AGENCY, and specifying the precise things excepted by CONTRACTOR.

9. Changes in the WORK: SUBCONTRACTOR shall make no changes in the WORK covered by this Subcontract, and SUBCONTRACTOR shall not be compensated for any change, without written approval from CONTRACTOR's corporate office before proceeding to execute the change. No compensation shall be allowed for changes in the WORK unless the costs therefore have been mutually agreed upon between CONTRACTOR and SUBCONTRACTOR and fixed in writing in advance of the changed work. SUBCONTRACTOR acknowledges that CONTRACTOR'S field personnel are not authorized to make changes in the terms, conditions, work, or other requirements as outlined in the Contract Documents and that these changes must be processed by the corporate office.

10. Releases/Bonds: SUBCONTRACTOR's Requests for Payment must be accompanied by: (1) conditional releases in compliance with California Civil Code §§ 8132 through 8138 executed by SUBCONTRACTOR and his laborers, subcontractors, material suppliers and/or equipment lessors for all mechanic's lien, stop notice, or payment bond rights for labor, services, materials and/or equipment furnished to the Project up to and including the date of the Request, and (2) unconditional releases in compliance with California Civil Code §§ 8132 through 8138 properly executed by SUBCONTRACTOR and his laborers, subcontractors, material suppliers and/or equipment lessors for all mechanic's lien, stop notice, or payment bond rights for labor, services, materials and/or equipment furnished to the Project up to and including the date of the prior Request for Payment. Failure to supply proper releases will result in delay of payment. CONTRACTOR may, at his option, make any payment or portion thereof by joint check payable to SUBCONTRACTOR and any of his subcontractors, suppliers, material men and/or equipment lessors. CONTRACTOR may, without further justification, require SUBCONTRACTOR to furnish payment and/or performance bonds for the full amount of the subcontract price. CONTRACTOR agrees to reimburse SUBCONTRACTOR for



Subcontractor Initial

4

Contractor Initial

actual costs of the required bonds, not to exceed two percent of the subcontract amount.

11. Commencement and Progress:  SUBCONTRACTOR will commence WORK within three (3) days after telephone or written notice from CONTRACTOR to do so, and shall prosecute the WORK diligently, expeditiously toward completion of the Work and in accordance with CONTRACTOR's progress schedule, as it may be amended from time to time, but in any event SUBCONTRACTOR will perform and complete all of his obligations and duties pursuant to this Subcontract no later than (See Exhibit "A") days after receiving telephone or written notice to commence.

12. Extensions of Time:  If SUBCONTRACTOR is delayed in the performance of the WORK by conditions that could not be foreseen by SUBCONTRACTOR and that are beyond the reasonable control of SUBCONTRACTOR, SUBCONTRACTOR's sole remedy shall be an extension of time equal to the period of delay, provided SUBCONTRACTOR has given CONTRACTOR written notice of the commencement of delay within 48 hours of its occurrence.  In the event that CONTRACTOR, in his sole discretion, should seek compensation from the AGENCY as a result of any delay, SUBCONTRACTOR shall be entitled to an equitable portion of any amount recovered by CONTRACTOR pertaining to SUBCONTRACTOR's WORK, minus a pro rata share of the cost of pursuing said claim.  This provision shall not be construed to require the CONTRACTOR to pursue any delay claim against the AGENCY or any other party.

13. Warranty: SUBCONTRACTOR warrants to AGENCY, Architect and CONTRACTOR that all materials and equipment furnished and incorporated into the Work shall be new unless otherwise expressly permitted in writing and executed by CONTRACTOR and that all WORK under this Subcontract shall be performed by SUBCONTRACTOR in a good and workmanlike manner, shall be of good quality, free from faults and defects and strictly conform to the requirements of the Contract Documents.  All WORK not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective.

The warranty provided herein shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents. SUBCONTRACTOR hereby warrants his WORK against all deficiencies and defects for the longest period permitted by California law but not less than one year from the date that SUBCONTRACTOR completes all WORK required by this Subcontract.

14. Quality:  SUBCONTRACTOR shall supervise and direct the completion of the Work, using SUBCONTRACTOR's best skill and attention. SUBCONTRACTOR shall be solely responsible for all construction means, methods, techniques, sequences, procedures and for coordinating all portions of the Work in strict compliance with the Contract Documents.

Unless otherwise specifically noted, SUBCONTRACTOR shall provide and pay for all labor , materials, equipment, tools, construction equipment and machinery, water, heat

5

Subcontractor Initial

Contractor Initial

utilities, transportation, fees, taxes, permits, licenses, visas and the like, and other facilities and services necessary for the proper execution and completion of the Work as specified in SUBCONTRACTOR's Scope of Work.

SUBCONTRACTOR shall at all times enforce strict discipline and good order among his employees, and shall not employ or utilize on the Work any unfit person, any person under the influence of alcohol or illegal drugs, or anyone not skilled or trained to properly perform the task assigned to SUBCONTRACTOR. SUBCONTRACTOR agrees to remove permanently from the site any personnel, including supervisory personnel that have been determined by CONTRACTOR to be unsatisfactory.

SUBCONTRACTOR shall give all notices and comply with all laws, ordinances, rules, regulations and orders of any Federal, State, County, City or other public authority or required bearing on the performance of the Work. It is the sole responsibility of SUBCONTRACTOR to determine the requirements which must be met to enable SUBCONTRACTOR to be in compliance with all laws, ordinances, rules, regulations and orders of any public authorities.

SUBCONTRACTOR shall pay all taxes including, but not limited to income, sales, consumer, use and other taxes required by law and shall secure all permits, licenses, visas and the like necessary for the execution and completion of the Work. It is the sole responsibility of SUBCONTRACTOR to determine what taxes and fees must be paid and what permits and licenses must be obtained. SUBCONTRACTOR shall keep complete and accurate records to determine what taxes and fees and shall permit CONTRACTOR to have access to and photocopy such records during normal business hours.

SUBCONTRACTOR shall be responsible for the acts and omissions of all its employees, agents, licenses and/or all other persons performing any of the Work on behalf of or with SUBCONTRACTOR.

15. Contractor's License: SUBCONTRACTOR represents that he is and will remain properly licensed, and that his subcontractors (if any) are and will remain properly licensed, to perform all WORK required under this Subcontract.

16. Codes and Regulations:

    A. SUBCONTRACTOR represents that he is fully familiar with all ordinances, codes, rules and regulations of any agency having jurisdiction that apply to the WORK, and that SUBCONTRACTOR will comply with them in performing the WORK. If there is a conflict between the Contract Documents and any applicable ordinance, code, rule, or regulation, the SUBCONTRACTOR will comply with the ordinance, code, rule or regulation.

    B. SUBCONTRACTOR shall disclose to CONTRACTOR, in writing, whether as of the time of award of this Subcontract SUBCONTRACTOR, or its principals, is or is not debarred, suspended or proposed for debarment by the Federal Government. [FAR 52.209-6]

    C. SUBCONTRACTOR shall submit to CONTRACTOR upon execution of this Subcontract, Standard Form (SF) 294, and Subcontracting Report for Individual Contracts, and/or SF 295, Summary Subcontract Report as required by FAR 52.219-9.



Subcontractor Initial

6

Contractor Initial

D.  SUBCONTRACTOR shall be bound by the provisions of the following clauses of the Federal Acquisition Regulations (FAR), copies of which may be obtained at www.acquisition.gov/browsefar: Plus all other FAR clauses as incorporated per the Prime Contract.

(1) Contract Work Hours and Safety Standards Act - Overtime Compensation, FAR 52.222-4;
(2) Davis-Bacon Act, FAR 52.222-6;
(3) Withholding of Funds, FAR 52.222-7;
(4) Payrolls and Basic Records, FAR 52.222-8;
(5) Apprentices and Trainees, FAR 52.222-9;
(6) Compliance with Copeland Act Requirements, FAR 52.222-10;
(7) Subcontracts (Labor Standards), 52.222-11;
(8) Contract Termination - Debarment, FAR 52.222-12;
(9) Compliance with Davis-Bacon and Related Act Regulations, FAR 52.222-13;
(10) Disputes Concerning Labor Standards, FAR 52.222-14; and
(11) Certification of Eligibility, FAR 52.222-15.
(12) FAR 52.222-54 Employment Eligibility Verification.
(13) FAR 52.25-10 Notice of Buy American Act Requirement

17.  Cleanup SUBCONTRACTOR shall follow CONTRACTOR's cleanup and safety directions, and: (a) at all times keep the building and premises free from debris and unsafe conditions resulting from SUBCONTRACTOR's WORK, and (b) broom clean SUBCONTRACTOR's work area(s) daily and prior to discontinuing work in the same, and (c) remove all debris, trash, rubbish, and excess materials not less than weekly.

SUBCONTRACTOR shall at all-time keep the Project's premises free from accumulation of waste materials or rubbish caused by SUBCONTRACTOR's operations. SUBCONTRACTOR shall promptly and periodically remove all accumulations of waste material or rubbish. At the completion of the Work, SUBCONTRACTOR shall promptly remove all of its waste materials or rubbish from and about the Project as well as its tools, construction equipment, machinery and surplus materials, shall clean all glass surfaces, linoleum's, finished or unfinished and shall leave the Work "broom clean" or its equivalent, except as otherwise specified in writing by CONTRACTOR. If SUBCONTRACTOR fails to do so, CONTRACTOR is authorized to employ a third party to perform the "clean up" services and withhold a sufficient amount from the payments to SUBCONTRACTOR to cover the cost of such "clean up" services. If SUBCONTRACTOR is not entitled to payment(s) under this Subcontract or if the amounts of such payment(s) are insufficient to cover the cost of "clean up" services performed, CONTRACTOR shall charge SUBCONTRACTOR the costs of such services and SUBCONTRACTOR agrees to promptly reimburse CONTRACTOR for the amounts so charged.

If SUBCONTRACTOR fails to immediately commence compliance with cleanup duties within twenty-four (24) hours after written notification from CONTRACTOR of non-compliance, CONTRACTOR may implement such cleanup measures without any further notice and deduct the cost thereof form any amounts due or to become due to SUBCONTRACTOR.

18. Protection of persons and Property:  SUBCONTRACTOR shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.  SUBCONTRACTOR shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to: (1)

7

Subcontractor Initial

Contractor Initial

all employees performing the Work and other persons who may be affected thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the Project site or adjacent thereto.

19. Safety The prevention of accidents on or in the vicinity of its WORK is the SUBCONTRACTOR's responsibility, even if CONTRACTOR establishes a safety program for the entire PROJECT. SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction, including, but not by way of limitation, CAL-OSHA, US Army Corps of Engineers "Safety and Health Requirements Manual", and by CONTRACTOR and AGENCY, including, but not limited to, requirements imposed by the Contract Documents. SUBCONTRACTOR shall comply with the reasonable recommendations of insurance companies having an interest in the PROJECT, and shall stop any part of the WORK which CONTRACTOR deems unsafe until corrective measures satisfactory to CONTRACTOR shall have been taken. CONTRACTOR's failure to stop SUBCONTRACTOR's unsafe practices shall not relieve SUBCONTRACTOR of the responsibility therefore. SUBCONTRACTOR shall notify CONTRACTOR immediately following any accident and promptly confirm the notice in writing. A detailed written report shall be furnished if requested by CONTRACTOR. SUBCONTRACTOR shall indemnify CONTRACTOR for fines, damages or expenses incurred by CONTRACTOR because of SUBCONTRACTOR's failure to comply with safety requirements.

(a)Safety Certification: It is the responsibility of SUBCONTRACTOR to ensure all employees onsite have completed OSHA 10 hour safety training, OSHA 30 hour safety training or equivalent. All Supervisors/Foreman must have completed OSHA 30 hour safety training.

20. Security: SUBCONTRACTOR is hereby advised that it is SUBCONTRACTOR'S responsibility to ensure that it remains in full compliance at all times with all security provisions of the AGENCY. In addition, SUBCONTRACTOR agrees that all personnel assigned by SUBCONTRACTOR to complete the work shall be legal residents of the United States. Failure to meet these requirements may be considered a default as outlined in Paragraph 30 of this agreement.

21. Insurance: Before CONTRACTOR makes any payment to SUBCONTRACTOR under this Subcontract, and before SUBCONTRACTOR performs any WORK on the Project, SUBCONTRACTOR shall deliver to CONTRACTOR certificates of insurance, which name the CONTRACTOR and AGENCY as additional insureds, signed by hand, showing that SUBCONTRACTOR has the coverage required by this paragraph. The failure of CONTRACTOR to enforce in a timely manner any of the provisions of this paragraph shall not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Subcontract.

(a) Liability Insurance: Comprehensive general liability insurance, with broad form coverage, which includes coverage for settlement, explosion, collapse, underground hazards, premises and operations, products and completed operations, personal injury liability, products liability, and contractual liability insuring the obligations assumed by SUBCONTRACTOR in this Subcontract, will be provided by SUBCONTRACTOR. The certificate will provide that the insurance may not be canceled or modified without thirty (30) days prior written notice by the insurance carrier to CONTRACTOR. The certificate will name CONTRACTOR and the AGENCY as additional named insured under the

8

Subcontractor Initial                                                                                    Contractor Initial

policy, and will provide that the coverage afforded by the policy is primary, and that any other insurance of CONTRACTOR covering the same risk or risks is excess and non-contributory. The insurance shall have a limit of not less than $1,000,000 for bodily injury and a limit of not less than $1,000,000 for property damage.

(b) <u>Automobile Insurance:</u> SUBCONTRACTOR shall provide CONTRACTOR with a certificate showing that he has in force comprehensive automobile liability insurance covering all owned and non-owned vehicles with limits of not less than $500,000 for bodily injury and not less than $500,000 for property damage. The certificate of insurance for comprehensive automobile liability shall be in the same form as required above for comprehensive general liability.

(c) <u>Workers' Compensation:</u> SUBCONTRACTOR shall supply to CONTRACTOR a certificate showing that SUBCONTRACTOR is in compliance with the State of California requirements for workers' compensation insurance. The certificate shall provide that the insurance may not be canceled without thirty (30) days prior written notice to CONTRACTOR.

22. <u>Indemnity</u>: To the greatest extent permitted by law, SUBCONTRACTOR shall defend, indemnify and hold harmless CONTRACTOR, OWNER, and OWNER'S architect and engineer, and any of their respective directors, officers, agents, employees, parents, affiliates, subsidiaries, partners, and representatives, and any other persons or entities designated by any of them (collectively, the "Indemnitees") from and against all actions, penalties, assessments, fines, actions by governmental authorities, demands, liabilities, claims, damages, costs, losses and expenses, including but not limited to attorney's fees and costs, which arise out of or are in any way related (i) to this AGREEMENT, (ii) to actual or alleged actions or omissions by SUBCONTRACTOR or any of its subcontractors, suppliers, vendors, employees, or persons for whom it is responsible, or (iii) to the project(s) to which the AGREEMENT relates (all collectively referred to as "Liabilities").

   a) Notwithstanding the foregoing, if any of the other SUBCONTRACT DOCUMENTS impose more stringent defense, indemnity, contribution or hold harmless obligations than are set forth herein, then the more stringent provisions shall apply, and SUBCONTRACTOR shall owe the same defense, indemnity, contribution, and hold harmless obligations to CONTRACTOR as CONTRACTOR owes to OWNER.

   b) The obligations of this Section shall apply notwithstanding the negligence or other fault of the Indemnitees; however, the obligations specified above shall **not** extend to any claims, demands, damages, costs, or liabilities arising out of the sole negligence or willful misconduct of the person to be indemnified, defended, or held harmless. The obligations of this Section are in no way limited or relieved by SUBCONTRACTOR having obtained insurance, by the provisions of the insurance requirements of this agreement and/or to the extent permitted by law by the provisions of any workers compensation law, regulation or arrangement.

23. <u>Substitutions</u>: No revisions or substitutions shall be allowed or permitted in the WORK except upon prior written approval by CONTRACTOR having first been



Subcontractor Initial

9

Contractor Initial

obtained.

24. <u>Correction of Work</u>:    SUBCONTRACTOR shall promptly correct any Work that fails to conform to the requirements of the Contract Documents, whether such failure to conform appears during the progress of the Work or after the completion thereof, and shall promptly remedy any defects due to faulty materials, equipment or workmanship which appear within a period of one year from the date of completion of the Project or within such longer period of time as may be allowed or prescribed by law or by the terms of any applicable special guarantee required by the Contract Documents.

25. <u>Assignment and Subcontracting</u>: SUBCONTRACTOR will not assign the WORK under this Subcontract, or subcontract any portion of it, without the prior written consent of CONTRACTOR.  SUBCONTRACTOR shall not make any assignment of payments to be earned by SUBCONTRACTOR under this Subcontract.

A "Sub-Subcontractor" is an entity that has an agreement with the SUBCONTRACTOR to perform any of the Work.

Unless otherwise specified in the Contract Documents, SUBCONTRACTOR shall promptly furnish to CONTRACTOR in writing a list of names of Sub-subcontractors proposed for use by SUBCONTRACTOR to help SUBCONTRACTOR complete any portion of the Work. SUBCONTRACTOR shall not utilize any Sub-subcontractor without prior written consent CONTRACTOR. Consent by CONTRACTOR does not operate as a waiver or release of SUBCONTRACTOR's obligations to CONTRACTOR or AGENCY under this Subcontract. Contracts between SUBCONTRACTOR and Sub-subcontractor shall be in accordance with the terms of this Subcontract and shall include the terms and conditions of this subcontract.

SUBCONTRACTOR shall not delegate any duties it owes to CONTRACTOR and/or AGENCY under this Subcontract or assign this Subcontract or any rights it has under this Subcontract to any entity without the prior written consent of CONTRACTOR. No consent by CONTRACTOR to any such assignment of rights or delegation of duties shall operate as a waiver or release of SUBCONTRACTOR's obligations to CONTRACTOR and AGENCY under this Subcontract.

26. <u>Separate Contracts</u>:    CONTRACTOR has the right to let other contracts and subcontracts in connection with the Project, and SUBCONTRACTOR shall cooperate with any such contractors and subcontractors.

27. <u>Royalties and Patents</u>: SUBCONTRACTOR shall pay all royalties and license fees, if any, concerning the Work.  SUBCONTRACTOR shall defend all suits or claims for infringement of any patent, license, copyright or similar rights by SUBCONTRACTOR and shall save CONTRACTOR harmless from any loss on account thereof.

28. <u>Claims</u>: Should any dispute arise between CONTRACTOR and SUBCONTRACTOR regarding performance of the WORK, or any alleged change in the WORK, SUBCONTRACTOR shall timely perform the disputed work and shall give written notice of a claim for additional compensation for the disputed work within three (3) days after commencement of the disputed work.  SUBCONTRACTOR's failure to give written notice within the three (3) day period constitutes an agreement by SUBCONTRACTOR that it will receive no extra compensation for the disputed work.

29. <u>Liquidated Damages</u>:  It is understood and agreed that in case all of the WORK is

10

Subcontractor Initial

Contractor Initial

DocuSign Envelope ID: 1403D58C-E3B1-46A9-AB7B-C4953AFDB1CE

not completed within the time specified or within the time limit as extended due to unavoidable delays, damages will be sustained by CONTRACTOR, and that it is impracticable or extremely difficult to determine the actual damages which CONTRACTOR will sustain in the event of and by reason of such delay; and it is, therefore, stipulated that SUBCONTRACTOR will become liable to CONTRACTOR for the amount listed on the prime contract per day for each and every day's delay beyond the time specified or as extended.

30. Defaults by SUBCONTRACTOR:  If, in the opinion of the CONTRACTOR or the AGENCY, SUBCONTRACTOR fails to perform his work in accordance with this agreement, should such failure continue for forty-eight (48) consecutive hours after service of a written notice to the SUBCONTRACTOR, specifying the particulars of such failure, served personally or mailed to the SUBCONTRACTOR, then such failure and continuance thereof shall constitute a breach of contract by the SUBCONTRACTOR, and such breach shall entitle the CONTRACTOR to terminate the contract and complete the work himself, or cause the work to be completed by others, and the SUBCONTRACTOR agrees immediately to repay all costs and damages sustained by the CONTRACTOR on account of such failure; and any and all material and equipment of the SUBCONTRACTOR on the site or in the SUBCONTRACTOR's plant, may at the option of the CONTRACTOR by used or rejected.

Should SUBCONTRACTOR find it is unable to complete all of its WORK in the time agreed in this Subcontract, it shall make application to CONTRACTOR in writing at least ten (10) days prior to the expiration of the time for completion, stating the reason why and the amount of extension it should be granted.  CONTRACTOR then, at its discretion, may grant or deny such extension.

Any money due or to become due SUBCONTRACTOR may be retained to cover such liquidated damages and should such money not be sufficient to cover such damages, CONTRACTOR shall have the right to recover the balance from SUBCONTRACTOR or its sureties.

31. Termination by CONTRACTOR:  If SUBCONTRACTOR defaults, neglects and/or fails to carry out the Work in express accordance with the Contract Documents, CONTRACTOR may, after three (3) days written notice to SUBCONTRACTOR and without prejudice to any other remedy CONTRACTOR may have, commence correcting such deficiencies and deduct the cost thereof from the payment then or thereafter due SUBCONTRACTOR or, at CONTRACTOR's option, terminate this Subcontract and take possession of the site and of all materials, equipment, tools and construction equipment and machinery necessary to complete SUBCONTRACTOR's portion of work by whatever method CONTRACTOR deems expedient.  If such expenses exceed the unpaid balance otherwise due SUBCONTRACTOR, SUBCONTRACTOR shall promptly pay the difference to CONTRACTOR upon receipt of invoices therefore.
If SUBCONTRACTOR refuses to pay the expense above described or any part thereof, SUBCONTRACTOR agrees to pay all of CONTRACTOR's expense, including attorney's fees incurred on collecting the said expense. CONTRACTOR may offset against expenses incurred in finishing or correcting SUBCONTRACTOR's Work any moneys that are due and owing to SUBCONTRACTOR.

SUBCONTRACTOR shall have the right to correct any such default or violation of the Contract Documents during said three-day period, and if SUBCONTRACTOR does make such correction, all of Subcontractor's rights under this Subcontract shall be reinstated.  CONTRACTOR shall be entitled to recover any actual damages or loss,

11

including loss of profits, suffered by CONTRACTOR due to the delay in performance by SUBCONTRACTOR.

32. Attorneys' Fees:  In the event that legal action is instituted in order to interpret or enforce any provision contained in this Subcontract, the prevailing party in such action shall be entitled, in addition to any other remedy available by applicable law or this Subcontract, to an award as and for any attorney's fees, expert witness fees, or any other costs normally associated with such an action, in an amount so as to compensate said prevailing party for any actual attorney's fees, expert witness fees or other such costs incurred in good faith.  Said award shall be entered separately or as a portion of the award of the judge in any such action.

33. No Other Agreement:  This Subcontract document represents the entire agreement of the parties, and it shall supersede and not be modified by any proposal, bid, estimate, conversation, submittal, or other form of communication between SUBCONTRACTOR and CONTRACTOR before the date when this Subcontract is fully executed, whether or not such proposal, bid or estimate is signed by either or both of
the parties hereto.  This Subcontract cannot be modified by oral agreements, and may be modified only by a writing signed by both parties after the date of this Subcontract.

34. Notices:  Any notice permitted or required by the Contract Documents shall be given to CONTRACTOR or SUBCONTRACTOR at the address contained in this Subcontract. Notice will be deemed received by the other party in the ordinary course of the mail. Either party may change its address for purposes of notice under the Contract Documents at any time, but such change shall be effective only if it is made in writing to the other party.

35. Severability:  If any provision of this Subcontract or any other instrument constituting a Contract Document, or the applications thereof, shall for any reason be held invalid or unenforceable, neither the remainder of this Subcontract or other instrument, nor the applications of the provision to other persons, entities or circumstances, nor any other instrument referred to herein above, shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.  This Subcontract has been executed in counterpart and any executed copy thereof shall have the force and effect at law of any original, and shall be governed by the laws of the State of California.



Subcontractor Initial

12

Contractor Initial

36. <u>Signatures</u>:  No contractual obligations are imposed on CONTRACTOR by this document until CONTRACTOR has been supplied with a copy signed by SUBCONTRACTOR.  SUBCONTRACTOR shall provide CONTRACTOR, upon demand, with reasonable documentary proof of the authority of the party executing this Subcontract to execute the same on behalf of SUBCONTRACTOR.

DATED: This 03 day of February , 2020

SUBCONTRACTOR: California Environmental Systems, Inc.

CSLB #: 964556

Signature: Carter Pierce Jr.

Printed Name: Carter Pierce Jr.

CONTRACTOR: Patriot Construction, Inc.

CSLB #: 905350

Signature:

Printed Name: Christopher M Cotta, CEO

Subcontractor Initial

13

Contractor Initial

EXHIBIT "A"

\* Signing this subcontract acknowledges that you have received and read the attached required information in the Subcontract Packet.

\*\* Submittal Requirements
- 1 Digital Copy in accordance with the plans and specifications
- Detailed Table of contents
  - Table of contents to Include
    - Specification Section Reference
    - Submittal Type
      - Product Data
      - Safety Plans
      - Shop Drawings
      - As-built drawings
      - Warranty
      - Etc…
    - Model Number
    - Style Number
    - Manufacturer
    - Etc…
- See Specification Sections for Required Submittals



Subcontractor Initial

Contractor Initial

DocuSign Envelope ID: 193D59C-E3D1-0A49-AB7D-C1983AEDB1CE

**SCOPE OF WORK:**

Addenda: 1-4

Provide all labor and materials to removal of 5 split system CRAC units along with any associated Refrigeration/ Condensate piping associated.

Provide all labor and materials to install 4 new split system CRAC units in the same location. (One CRAC unit is not being replaced.) The CRAC units are being replaced with new generation units, sized at 20% larger than the existing units. This 20% oversizing is presumed to also be approximately 20% oversized from the heat load of the equipment within each room, but further verification will be necessary. All AC units are mounted on a raised floor, with all CU units mounted on grade outdoors.

Provide all labor and materials to provide the installation of new floor stands, and the refitting of the floor to the AC unit dimensions.

Provide all labor and materials to provide temporary cooling in the SIPR room while unit change out is being conducted.

Provide all labor and materials to connect to existing Siemens Apogee systems as required in the scope of work provided.

Provide all labor and materials to disconnect the cold-water piping and condensate at each AC unit as required.

New copper piping shall be used to provide a new tie in for both the humidifier cold water and condensate from each new AC unit back to the existing tie-in locations.

Piping shall be Type L copper with shut-off valves at each AC unit and dielectric fittings where tied into existing piping and at AC units.

Base Contract............................................................................................$536,680.00

**DURATION OF CONTRACT:** 60 Calendar Days



Subcontractor Initial

15

Contractor Initial

**EXHIBIT B**

**PAYMENT BOND**
*(See instructions on reverse)*

DATE BOND EXECUTED (Must be same or later than date of contract)
12/09/2019

OMB Control Number: 9000-0045
Expiration Date: 8/31/2022

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

**PRINCIPAL** *(Legal name and business address)*

Patriot Construction, Inc.
4646 Qantas Lane, Suite B-4
Stockton, CA 95206

Bond #9338456

**TYPE OF ORGANIZATION** *("X" one)*

☐ INDIVIDUAL   ☐ PARTNERSHIP   ☐ JOINT VENTURE
☒ CORPORATION   ☐ OTHER *(Specify)*

**STATE OF INCORPORATION**
California

**SURETY(IES)** *(Name(s) and business address(es))*

Fidelity and Deposit Company of Maryland
c/o Zurich North American
1299 Zurich Way
Schaumburg, IL 60196

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 1 | 244 | 536 | 0 0 |

**CONTRACT DATE**
12/05/2019

**CONTRACT NUMBER**
FA468617D0004, Task #FA468620F0009- B2445 HVAC Network Control Center

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

Patriot Construction, Inc.

| | 1. (Seal) | 2. (Seal) | 3. (Seal) | |
|---|---|---|---|---|
| **PRINCIPAL** | | | | |
| SIGNATURE(S) | 1. | 2. | 3. | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Christopher M. Cotta, CEO | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | 1. (Seal) | 2. (Seal) | |
|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | |
| NAME(S) *(Typed)* | 1. | 2. | |

**CORPORATE SURETY(IES)**

| SURETY A | NAME & ADDRESS | Fidelity and Deposit Company of Maryland c/o Zurich North American   1299 Zurich Way Schaumburg, IL 60196 | STATE OF INCORPORATION Illinois | LIABILITY LIMIT $ 27,371000 | |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Nicki Moon, Attorney In Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
*Previous edition is NOT usable*

STANDARD FORM 25A (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

## CORPORATE SURETY(IES) *(Continued)*

| | | | STATE OF INCORPORATION | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

### INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) **BACK**